## THE HOME INSURANCE COMPANY, Plff.,

### *v.*

## COMPAÑIA MERCANTIL ARROYANA AND KANSAS MILLING COMPANY, Dfts.

San Juan, Equity, No. 1207.

Opinion filed April 7, 1923.

*Mr. H. G. Molina* attorney for plaintiff.

*Mr. E. H. F. Dotlin* attorney for defendant Compañia Mercantil Arroyana.

ODLIN, Judge, delivered the following opinion:

On January 23, 1923, a bill was filed in this court by the Home Insurance Company against the Compañia Mercantil

Arroyana, a Porto Rican corporation, and the Kansas Milling Company, a Kansas corporation. The bill sets forth that in the month of June, 1922, five suits, each for the sum of $3,000, were brought before the Insular district court at Guayama, Porto Rico based upon five different policies of insurance which had been issued to the Compañia Mercantil Arroyana by the Home Insurance Company. It is further alleged in the bill that in these suits pending in the Insular district court the Compañia Mercantil Arroyana will contend and attempt to prove that these policies of insurance do not actually refer to and exclusively cover certain flour specifically described, but that by said five policies the Home Insurance Company insured against loss by fire any and all flour which the said Compañia Mercantil Arroyana had in its factory on or about the 15th day of August, 1921, other than the said 1,300 bags already mentioned. It is further claimed that unless these five policies of insurance are reformed so as to conform to the true, actual, and only agreement between the Home Insurance Company and the Compañia Mercantil Arroyana, the Home Insurance Company will be without remedy, because it is claimed that the Home Insurance Company will not be permitted to show as part of its defense to the said five suits now pending before the Insular district court what was and is the true contract, and that the Home Insurance Company therefore will be held liable to respond to the Compañia Mercantil Arroyana under said policies according to the claim of the latter. Therefore, the Home Insurance Company now brings this proceeding in equity in this Federal court and asks this court to reform the said five policies of insurance, and also asks this court that, pending the determination of this present bill, the said Compañia Mercantil

Arroyana and its officers, agents, and attorneys be enjoined and restrained from further proceeding with the five suits already pending before the Insular district court of Guayama.

Counsel for the Compañia Mercantil Arroyana has filed in this court formal objections to the granting of any injunction in this case, and claims that this court is without jurisdiction to grant any injunction, the same being forbidden by the provisions of § 265 of the Judicial Code; and further claims that the Home Insurance Company has an adequate remedy in the Insular district court of Guayama, where the five suits for $3,000 each were originally brought, and are now pending.

I am satisfied that the application for an injunction must be denied by me and the present bill dismissed.

It is of the utmost importance that a Federal court shall never interfere in any way with litigation pending in a state court, except in the limited classes of cases provided for by law and by the decisions of the United States Supreme Court, which classes of cases I will not enumerate, because I have set them forth in detail in a long decision recently rendered in the case of Bianchi v. Sobrinos de Ezquiaga, on January 5, 1923, [12 Porto Rico, 534]. If the Home Insurance Company did not wish to have litigation against itself in the Insular courts of Porto Rico, it would have been a simple matter to have issued the policies in question for $3,100, or for $3,010, or for $3,001 each instead of for the sum of $3,000 each. Limiting this liability upon these five policies to $3,000 virtually invited litigation in the Insular courts and this litigation having arisen, the Home Insurance Company asks this Federal court to relieve it from what it claims to be a serious embarrassment.

Furthermore, I am not at all satisfied with the contention of

counsel for the Home Insurance Company that he will be prevented by the Insular court or courts from seeking the reformation of these policies if he shall be entitled thereto. Of course he claims in his bill that he will not be permitted to show as part of his defense to the five suits now pending before the Insular district court what was and is the true contract. Of course, I do not pretend for one moment to pose as a prophet as to what action will be taken by the honorable judge of the Insular district court at Guayama; but I am convinced that if counsel for the Home Insurance Company shall seek to present before said Insular district court as part of his defense the fact that the policies as they now are do not express the true contract between the parties, and judgment shall be entered against the Home Insurance Company, such judgment in my opinion will be promptly reversed by the supreme court of Porto Rico. I go still further. In my opinion if the supreme court of Porto Rico shall by any decision deprive the Home Insurance Company of a defense which it is clearly entitled to make, such denial will operate as a taking of the property of the Home Insurance Company without due process of law, and the evil will be quickly remedied by the Supreme Court of the United States.

Counsel for the Home Insurance Company relies very strongly upon a case reported in 109 Fed. 681, which was decided by a Federal court in South Carolina in 1901. This is the case of Home Ins. Co. v. Virginia-Carolina Chemical Co. and the decision in this case is a very interesting one. But there is a marked difference between the case presented to this court and the case which was presented to the Federal court in South Carolina. In that case it appears that the same plaintiff com-

menced a number of actions in a state court upon insurance policies, all covering the same property. Only one of these actions was for a sum less than the jurisdictional limit, and they were removed to the Federal court. These various suits, however, were not against the same defendant. Numerous other insurance companies were interested besides the Home Insurance Company. Two of these insurance companies filed a bill in the Federal court, in which the plaintiff who received the policies, and also the other insurers of the property, were made defendants, and they alleged in their bill that all these different insurance contracts were by their terms interdependent, and then the bill went on to set forth certain equities which it was claimed necessarily had to be adjudicated before the liability of anyone of the insurers under this policy could be determined. It was held in the case of 109 Fed. that an injunction might properly issue in the Federal court as prayed for, and would not operate as a denial of the jurisdiction of the state court, nor would it effect an interference with such jurisdiction, but that it would operate only on the plaintiff in those actions so as to prevent such plaintiff from making an unfair use of the processes of courts of law to deprive the insurance companies of rights which under the facts as alleged in the bill such courts could not adequately protect. For these reasons a demurrer to the bill was overruled.

It will be observed that the peculiar conditions which surrounded the litigation in South Carolina are very much more complicated than the conditions in the present case, and furthermore, it will be observed that in the South Carolina case the Federal court had lawfully acquired, by removal, jurisdic-

tion over a number of the actions at law which had originally been instituted in the state court of South Carolina.

Therefore I am obliged to hold that the rule laid down by the United States circuit judge in South Carolina should not be followed by me in the litigation now under consideration.

In conclusion I think it is proper to observe that, although the Insular courts of Porto Rico persist in showing an unexplainable determination to interfere with the lawful jurisdiction of the United States district court of Porto Rico, this fact must not operate in the slightest to induce this court to grasp jurisdiction of causes which properly belong in the Insular courts. I refer specifically to a decision of the supreme court of Porto Rico rendered May 17, 1921 [People v. Zayas] reported in vol. 29 of the reports of that court at page 423. This was a case where the people of Porto Rico as petitioners asked from that high court a writ of certiorari directed to the judge of the Insular district court at Ponce in which they directed him to revoke an order made by him, removing to this court a certain case which had been filed before him by People of Porto Rico v. Russell, and which the latter had removed to this court, and which this court had refused to remand. Dissatisfied with the order of this court refusing to remand the case to the Insular court, the Honorable Salvador Mestre, as attorney general of Porto Rico, and two of his assistants, sought to proceed with the litigation before the Insular court, and, as the result thereof, I had the very unpleasant duty of issuing an order of injunction against them on September 3, 1921. Dissatisfied with the ruling of this court, they carried the matter by appeal to the circuit court of appeals for the first circuit, and the order of this court was affirmed in a very clear and

direct decision written by his Honor, Mr. Circuit Judge Bingham on February 21, 1922, reported in 279 Fed. 44. And this court must be scrupulously careful to take jurisdiction only of such cases as are clearly within its proper functions.

I wish to quote one paragraph from a very important decision written by the late United States Circuit Judge Shelby sitting as one member of the United States circuit court of appeals for the fifth circuit, in the case of State v. Palmer, decided December 3, 1907, reported in 22 L.R.A.(N.S.) 316, 85 C. C. A. 603, 158 Fed. 705. On page 321 appears the following language: "In cases where a state court and a United States court may each take jurisdiction, the one which first gets jurisdiction holds it to the exclusion of the other until its duty is fully performed, and the jurisdiction invoked is exhausted. If jurisdiction as to the property attaches, it is exclusive till it has wrought its function. No other court of concurrent jurisdiction has the right to interfere with the property within the custody and control of the court first obtaining jurisdiction. Taylor v. Taintor, 16 Wall. 366, 370, 21 L. ed. 287, 290; Covell v. Heyman, 111 U. S. 176, 28 L. ed. 390, 4 Sup. Ct. Rep. 355. This principle is recognized in authorities too numerous for citation as one which is essential to the dignity and authority of every court, and essential also to the comity which should control the relations between courts of concurrent jurisdiction. A Federal court, in a case where the possession of the thing in suit is necessary to the granting of the relief sought, after it has assumed jurisdiction, issued a subpœna in equity, caused it to be served, set the cause down for hearing, and made an order appointing a receiver, would not permit a state court to interfere with its jurisdiction over the property

embraced by the order. The whole power of the Federal government, if necessary, would sustain the court in maintaining its exclusive jurisdiction. The United States courts should willingly give the same exclusive effect to proceedings in a state court of concurrent jurisdiction that they claim for such proceedings in Federal courts. The rules on the subject must be reciprocal, otherwise they will not produce that concord and harmony that is so essential to the effective and satisfactory enforcement of the law."

If anything more were needed in support of the position taken by me that I must decline jurisdiction in the present case, I will quote the language of Mr. Justice Sutherland of the United States Supreme Court in one of the first,—if not the first,—opinions prepared by him since he took his seat upon that high court in the latter part of the year 1922. I refer to the case of Kline v. Burke Constr. Co. The decision was made on November 20, 1922, and is found in the Supreme Court, reported in 260 U. S. 226, 67 L. ed. 226, 24 A.L.R. 1077, 43 Sup. Ct. Rep. page 79.

It seems that the Construction Company sued Kline in an action at law in the Federal court and immediately thereafter Kline sued the Construction Company in the state court, which latter suit was removed and later remanded. The suit which was originally brought in the Federal court was tried and resulted in a mistrial. Then the Construction Company filed a bill in the Federal court seeking to enjoin the proceedings in the state court. The district court denied the injunction. An appeal was taken to the circuit court of appeals and the ruling of the district judge was reversed. Later the Supreme Court reversed the court of appeals and affirmed the judgment of the

district court, holding that the reasoning of the circuit court of appeals was incorrect. I quote briefly from the opinion of Mr. Justice Sutherland: "The right of a litigant to maintain an action in a Federal court on the ground that there is a controversy between citizens of different states is not one derived from the Constitution of the United States, unless in a very indirect sense. Certainly it is not a right granted by the Constitution." Further on, his opinion reads as follows: "The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction, is a rule of right and of law based upon necessity; and where the necessity, actual or potential, does not exist, the rule does not apply."

After careful consideration of the entire matter, I am clearly convinced that I have no power to interfere in this matter, and therefore the petition for an injunction is denied, and the bill dismissed without prejudice, but with costs to the Home Insurance Company.