### MESTRE, Atty. Gen., et al. v. RUSSELL & CO.

(Circuit Court of Appeals, First Circuit. February 21, 1922.)

No. 1530.

1. **Appeal and error ⬤⟹863—Question of jurisdiction of District Court cannot be raised on appeal in ancillary proceeding.**

Whether a District Court acquired jurisdiction of a cause by removal, where it sustained its jurisdiction by overruling a motion to remand, cannot be determined by the appellate court on an appeal in an ancillary suit.

2. **Courts ⬤⟹264(4)—Ancillary suit to restrain proceedings by law officers of Porto Rico sustained.**

If the District Court of the United States for the District of Porto Rico had jurisdiction of suit by people of Porto Rico, brought in a local court and removed by defendant to the District Court, it could protect that jurisdiction by granting an injunction in ancillary suit restraining further proceedings in the original cause in the lower court by the law officers of Porto Rico.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Suit in equity by Russell & Company, sucs. S. en C., against Salvador Mestre, Attorney General of Porto Rico, and others. From an order granting a temporary injunction, defendants appeal. Affirmed.

Grant T. Trent, of Washington, D. C., and Joseph A. Loret, Asst. Atty. Gen., of Porto Rico (Salvador Mestre, Atty. Gen., of Porto Rico, and Miguel A. Munoz, of San Juan, Porto Rico, on the brief), for appellants.

Francis E. Neagle, of New York City (O. B. Frazer, Nelson Gammans and Rounds, Hatch, Dillingham & Debevoise, all of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from an interlocutory decree of the federal District Court of Porto Rico, granting an injunction.

March 5, 1921, the people of Porto Rico brought an action at law in the District Court of Ponce, Porto Rico, against Russell & Company, sucs. S. en C., a partnership formed under the Civil Code of Porto Rico, all the members of which were citizens of a state of the Union, except one, who was a citizen of the Dominion of Canada—none of whom were domiciled in Porto Rico. The action was removed by the defendants from the District Court of Ponce to the federal District Court, on the ground that the members of the partnership were citizens of a state of the Union or subjects of a foreign government, not domiciled in Porto Rico, and that the amount involved, exclusive of interest and costs, exceeded $3,000.

After the cause was docketed in the federal District Court the people of Porto Rico, through its Attorneys General, appeared specially and filed a motion to remand the cause, which motion was denied. After the motion was denied the people of Porto Rico, through its law officers, threatened to prosecute the action at law in the District Court of Ponce and ask for judgment by default unless the partnership, Russell & Co., appeared and filed an answer in that court within a limited time. Thereupon Russell & Co. brought a bill of complaint against Salvador Mestre, Joseph A. Loret, and Miguel A. Munoz, the Attorneys General for Porto Rico, citizens of the United States domiciled in Porto Rico, alleging that they were the persons charged by law with the legal representation of the people of Porto Rico before the courts of the island, and setting forth the bringing of the action by the people of Porto Rico against Russell & Co. in the District Court of Ponce, the removal of the cause to the United States District Court for Porto Rico, the motion to remand, and the denial of said motion; that the defendants had knowledge of the denial of their motion, and that, notwithstanding these facts, they had threatened and were threatening to continue the prosecution of the action before the District Court of Ponce, etc.; that further proceedings in that court would work irreparable injury to the plaintiffs for which they had no adequate remedy at law; that an

entry of judgment in said cause and the execution thereof by that court would deprive them of their real estate without due process of law; and that to prevent such injury and to protect the jurisdiction of the federal court equitable relief by this ancillary suit was necessary. The bill concluded with a prayer for an injunction restraining the defendants from further prosecuting the action in the District Court of Ponce and from entering judgment and taking execution therein. After notice and hearing on this bill the court below ordered an injunction pendente lite to issue against the Attorney General of Porto Rico and his associates, upon Russell & Co. giving bond in the sum of $1,000 conditioned to pay damages in case the injunction was improperly issued and the people of Porto Rico or the Attorneys General suffered damage. It is from this decree that the appeal is taken.

There are 39 assignments of error. By them it is sought to raise the following questions: (1) Was the case improperly removed from the District Court of Ponce so that the federal District Court did not acquire jurisdiction of the original cause and parties; and (2) did the federal District Court have jurisdiction of the ancillary proceedings; and, if so, was its decree enjoining the law officers of Porto Rico without authority and unlawful as being in effect an injunction against the people of Porto Rico?

[1] As it appears that the proceeding in which the temporary injunction was issued was an ancillary proceeding in aid of the decree of the District Court of the United States retaining jurisdiction of the original cause, we do not regard the question of the jurisdiction of the federal court over the original cause as open on this appeal. When the removal papers were filed in the District Court of the United States, that court was vested with authority to determine whether the cause was properly removed (Ex parte Harding, 219 U. S. 363, 371, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. [N. S.] 392; Ex parte Nebraska, 209 U. S. 436, 28 Sup. Ct. 581, 52 L. Ed. 876), and its subsequent decree, in passing upon the motion to remand, determined that the cause was properly removed. It is true that was not a final decree, and may or may not be reversed upon an appeal after final decree is entered in the court below in the original cause; but its validity cannot be inquired into here in this ancillary proceeding.

This question was presented in the case of McCabe v. Guaranty Trust Co. of New York, 243 Fed. 845, 156 C. C. A. 357, on a similar statement of facts. The Circuit Court of Appeals for the Second Circuit, in considering the matter, said:

"The question whether the action was properly removed from the state court was raised in the District Court on a motion to remand, and that court decided that the case was legally removed, and overruled the motion to remand. Whether the refusal to remand was error is not before this court in the present suit. The way to correct that error, if error was committed, is not by means of an averment in an answer filed in an ancillary suit. The Guaranty Trust Company denies that the original action was properly removed. In other words, it denies the jurisdiction of the District Court over a suit which is removed solely on the ground of diverse citizenship, where the assignees[ors] do not live in the same district. The question whether jurisdiction exists under such circumstances is a most important one, upon which, unfortunately, the judges in the Southern district hold contradictory

views. In the original suit now under discussion the District Judge thought he had jurisdiction, and, as we have seen, refused to remand. In Doherty v. Smith (D. C.) 233 Fed. 132 (1915), Judge Learned Hand felt constrained to hold the reverse, not feeling himself sufficiently assured whether Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, was intended to be overruled by the cases of In Matter of Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061 (1909), and of In the Matter of Athanasi Nicola, 218 U. S. 668, 31 Sup. Ct. 228, 54 L. Ed. 1203. While appreciating all this fully, we are prevented from expressing our views upon the subject at this time; for the law is that the jurisdiction of the court as regards the principal suit cannot be questioned in an ancillary proceeding or suit. Johnson v. Christian, 125 U. S. 642, 8 Sup. Ct. 989, 1135, 31 L. Ed. 820 (1888); New Orleans v. Fisher, 180 U. S. 185, 21 Sup. Ct. 347, 45 L. Ed. 485 (1901)."

See also same case on certiorari from the Supreme Court. 247 U. S. 505, 38 Sup. Ct. 427, 62 L. Ed. 1240.

[2] The remaining question is whether the federal District Court had jurisdiction to entertain the ancillary proceeding and grant the injunction, the contention being that that proceeding was, in effect, a suit against tthe people of Porto Rico, and that the people of Porto Rico, by bringing the original suit in the District Court of Ponce, had not consented to litigate the cause in the District Court of the United States for Porto Rico, or to be sued therein.

There can be no doubt that the court below, by its decree refusing to remand the original cause, ruled that it had jurisdiction of the subject-matter of that cause and of the parties, one of whom was the people of Porto Rico, and that the people of Porto Rico by bringing a suit subject to removal had consented to its removal and the jurisdiction thereby acquired. This being so, we do not regard the question of the court's jurisdiction over the people of Porto Rico in the original cause as open to us to pass upon at this time; but it would seem that the court below was warranted in finding that the people of Porto Rico, by instituting the original suit, had consented to abide by the rules of law governing the trial of the cause, and the determination of their rights therein by the District Court of the United States, as well as by the District Court of Ponce, if it might be properly removed thereto for trial.

In Gunter v. Atlantic Coast Line, 200 U. S. 273, 291, 26 Sup. Ct. 252, 50 L. Ed. 477, it appeared that Pegues, a stockholder of the railroad, brought an action in the Circuit Court of the United States in the South Carolina District against the railroad and the taxing officers of the state, claiming that the railroad was exempt from the payment of certain taxes which the state, through its officers, threatened to assess upon and collect out of the property of the road, and prayed for an injunction to stay their collection; that the officers of the state, including the Attorney General, appeared and defended the cause; and that a final decree was entered enjoining the collection of the taxes. After some 25 years had elapsed, the Attorney General, in behalf of the state, instituted a proceeding against the railroad in the state court, claiming there was a phase of the litigation that had been overlooked in the earlier trial, and which, if it had been presented, would have resulted in disclosing that the plaintiff was not entitled to the exemption. After this suit was instituted in the state court, the railroad brought a

bill in equity in the Circuit Court of the United States, ancillary to the original suit in which the decree was entered, setting out that decree and the institution of the recent suit in the state court, and asked for an injunction against the Attorney General, counsel associated with him, and the taxing officers, staying the prosecution of the state suit. A final decree was entered, enjoining the Attorney General and others from proceeding in the state court. The case was appealed to the Supreme Court. One of the grounds insisted upon was that the Circuit Court was without power to restrain the Attorney General of South Carolina; that he was the legal representative of the state, and the state could not be sued without its consent. Having concluded that, although the state was not a party eo nomine, it was a party in fact to the original suit, the Attorney General and his assistants having voluntarily appeared therein, so that it was bound by the decree, the court, in discussing the question whether the Circuit Court could properly enjoin the Attorney General (200 U. S. at page 291, 26 Sup. Ct. 259, 50 L. Ed. 477), said:

"It is insisted that the court below had no power to restrain the Attorney General of South Carolina and the counsel associated with him from prosecuting in the state courts actions authorized by the laws of the state, and hence that the court erred in awarding an injunction against said officers. Support for the proposition is rested upon the terms of the Eleventh Amendment and the provisions of section 720 of the Revised Statutes, forbidding the granting of a writ by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy. The soundness of the doctrine relied upon is undoubted. In re Ayers, 123 U. S. 443; Fitts v. McGhee, 172 U. S. 516. The difficulty is that the doctrine is inapplicable to this case. Section 720 of the Revised Statutes was originally adopted in 1793, whilst the Eleventh Amendment was in process of formation in Congress for submission to the states, and long, therefore, before the ratification of that amendment. The restrictions embodied in the section were, therefore, but a partial accomplishment of the more comprehensive result effectuated by the prohibitions of the Eleventh Amendment. Both the statute and the amendment relate to the power of courts of the United States to deal, against the will and consent of a state, with controversies between it and individuals. None of the prohibitions, therefore, of the amendment or of the statute relate to the power of a federal court to administer relief in causes where jurisdiction as to a state and its officers has been acquired as a result of the voluntary action of the state in submitting its rights to judicial determination. To confound the two classes of cases is but to overlook the distinction which exists between the power of a court to deal with a subject over which it has jurisdiction and its want of authority to entertain a controversy as to which jurisdiction is not possessed. From this it follows that, as in the Pegues Case, the court had acquired jurisdiction with the assent of the state of South Carolina, to determine as to it the controversy presented in that case, the right of the court to administer relief, to make its decree effective, cannot be measured by constitutional or statutory provisions relating to original proceedings where jurisdiction over the controversy did not obtain. In other words, the proposition relied upon is disposed of by the conclusion which we have previously expressed concerning the persons who were parties and privies to the decree rendered in the Pegues Case. Indeed, the proposition that the Eleventh Amendment, or section 720 of the Revised Statutes, control a court of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion. Dietzsch v. Huidekoper, 103 U. S. 494; Prout v. Starr, 188 U. S. 537; Julian v. Central Trust Co., 193 U. S. 93, 112.'"

If the law officers of a state, in view of the Eleventh Amendment and section 720 of the Revised Statutes (Comp. St. § 1242), may be enjoined from prosecuting a suit in a state court under the circumstances above narrated, there would seem to be little doubt but that the law officers of Porto Rico might be, under the circumstances here presented, for the people of Porto Rico was undoubtedly a party to the original suit and the decree retaining jurisdiction of the cause determined, so far as this case is concerned, that the suit was properly removed.

The decree of the District Court of the United States for Porto Rico is affirmed, with costs to the appellee.